# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| JEFFREY A. B.,[1] | Case No. CV 20-00936-AS |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| ANDREW SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**PROCEEDINGS**

On January 29, 2020, 2019, Jeffrey A. B. ("Plaintiff") filed a Complaint seeking review of the denial of his applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration. (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-12). On September 11, 2020, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 15-16). On December 7, 2020, the parties filed a Joint Submission ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Dkt. No. 17).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISIONS**

On July 14, 2016, Plaintiff, formerly employed as a sales representative for automobile parts/supply companies (see AR 70-71, 250), filed applications for Disability Insurance Benefits and Supplemental Security Income, both alleging a disability onset date of August 1, 2009. (See AR 205-19, 222-30, 243-44). Plaintiff's applications were denied initially on November 18, 2016. (See AR 124-28, 130-35).

On October 4, 2018, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") John W. Rolph. (See AR 70-81). The ALJ also heard testimony from vocational expert ("VE")

Mark Tasso. (See AR 81-88). On November 19, 2018, the ALJ issued a decision denying Plaintiff's requests for benefits. (See AR 31-45).

Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since August 1, 2009, the alleged disability onset date. (AR 34). At step two, the ALJ determined that, with respect to the Supplemental Security Income claim, Plaintiff had the following severe impairments: "lumbar spine problems with pain; bilateral knee problems with pain; right lower extremity problems/pain status post necrotizing fasciitis and four compartment fasciotomy; polymyositis; myofascial muscle pain; chronic pain syndrome; and morbid obesity." (AR 34).[2] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in the regulations. (AR 37-38).[3]

---

[2] The ALJ found that, with respect to the Disability Insurance Benefits claim, Plaintiff's impairments were not medically determinable as of December 31, 2012, the date last insured. (AR 34).

The ALJ found that, with respect to the Supplemental Security Income claim, Plaintiff's other impairments -- "status post altered mental state/confusion; status post-sepsis; unspecified protein-calorie malnutrition; generalized weakness; open wound of the abdominal wall; agitation; hypoalbuminemia; penile discharge; encephalopathy; status post closed head injury with concussion and preorbital hematoma; status post scalp lacerations with sutures; grand mal seizure; syncopal episode; gastroenteritis; bradycardia; hypokalemia; nausea/vomiting; possible fracture left fifth rib; dermatitis right lower extremity; headache; bilateral lower extremity edema; [] diverticulosis of the sigmoid colon"; "left fifth metatarsal fracture; paronchyia of toe/nail disorder; a pressure ulcer, stage 2 and 3 (abdomen); dyspnea on effort; left ankle strain; [] erectile dysfunction"; essential hypertension; asthma; alcohol abuse; marijuana use; opiate dependence; mood disorder/depression; and anxiety disorder -- were non-severe. (AR 34-37).

[3] The ALJ specifically considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 1.08 (soft
(continued...)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[4] and found that Plaintiff could perform light work[5] with the following limitations:

> [T]he claimant is able to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk a combined total of two hours in an eight-hour day, for 15 to 20 minutes at a time. The claimant can sit six hours in an eight-hour day. The claimant requires a sit/stand option at 30 to 45 minutes intervals for three to five minutes at a time, during which period he may remain on task. The claimant may occasionally climb ramps and stairs, stoop, kneel, and crouch. The claimant may never climb ladders, ropes, scaffolds, or crawl. With the lower extremities, the claimant may never push, pull, or engage in foot pedal operations. The claimant must avoid more than occasional exposure to extreme cold, wetness, vibration, and irritants such as fumes, odors, dust, gases, chemicals, and poorly ventilated spaces. The claimant should avoid all exposure to hazards such as dangerous moving machinery and unsecured heights.

(AR 38-43).

At step four, the ALJ found that Plaintiff was not able to perform any past relevant work. (AR 43). At step five, the ALJ determined, based on Plaintiff's age (35 years old on the alleged disability onset date), education (completed high school), work experience, RFC, and the VE's testimony, that Plaintiff can perform the following jobs that exist in significant numbers in the national economy: telephone order clerk (Dictionary of Occupational Titles ["DOT"] 209.567-014); addresser (DOT 209.587-010); sorter (DOT 209.687-022); and charge-account clerk (DOT

---

[3] (...continued)
tissue injury), 14.05 (polymyositis and dermatomyositis). (AR 37).

[4] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

205.367-014).  (AR 44-45).  Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 1, 2009 through November 19, 2018, the date of the decision.  (AR 45).

The Appeals Council denied Plaintiff's request for review on December 3, 2019.  (AR 1-5).  Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.  See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017).  To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court]

may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[6]

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in finding, based on the VE's testimony, that the jobs of addresser, telephone order clerk, and charge-account clerk exist in significant numbers in the national economy. (See Joint Stip. at 5-11,19-22).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from legal error.

**A. The ALJ Properly Found that the Jobs of Addresser, Telephone Order Clerk and Charge-Account Clerk Exist in Significant Numbers in the National Economy; Any Error in the ALJ's Findings was Harmless**

Plaintiff asserts that the ALJ erred at step five in determining, based on the VE's testimony, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically, addresser, telephone order clerk, and charge-account

---

[6] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

6

clerk.⁷ According to Plaintiff, information contained in certain publications -- the DOT, the 2016 Occupational Outlook Handbook ("OOH"), the O*NET OnLine ("O*Net"), the Occupational Requirements Survey, and the 2011 Occupational and Medical-Vocational Claims Review Study ("OMVCRS") -- contradict the VE's testimony about the number of jobs of addresser, telephone order clerk, and charge-account clerk that exist in the national economy. (See Joint Stip. at 5-11, 19-22).⁸

---

⁷ Plaintiff does not challenge the ALJ's determination, based on the VE's testimony, that Plaintiff can perform the job of sorter (see AR 44-45). In fact, Plaintiff concedes that the VE's testimony that there exist 11,000 sorter jobs in the national economy was "plausible." (See Joint Stip. at 21; see also Joint Stip. at 22 ["Only the occupation of sorter at 11,00 jobs is not contradicted by occupational data."].

However, to the extent Plaintiff argues that 11,000 sorter jobs in the national economy is not a significant number of jobs (see id.), Plaintiff has failed to cite any authority holding that 11,000 jobs in the national economy is not a significant number, and the Court is inclined to find that the ALJ properly found that 11,000 jobs in the national economy is a significant number. See Barker v. Sec'y of Health & Human Servs, 882 F.2d 1474, 1478 (9th Cir. 1989)(noting that the Ninth "Circuit has never clearly established the minimum number of jobs necessary to constitute a 'significant number'"); Martinez v. Heckler, 807 F.2d 771, (9th Cir. 1986)("Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer."); see also Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997)(affirming ALJ's finding that 10,000 jobs in the national economy was a significant number); Evans v. Colvin, 2014 WL 3845046, at *1 (C.D. Cal. Aug. 4, 2014)(finding that 6,200 jobs in the national economy was a significant number); but see Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014)(holding that the ALJ's finding that 25,000 national jobs was significant presented "a close call" but was sufficient).

⁸ As part of Plaintiff's request for review of the ALJ's decision, Plaintiff submitted sections of the DOT, the OOH, the O*Net, the Occupational Requirements Survey, and the OMVCRS to the Appeals Council. (See AR 301-500). The Appeals Council made such evidence part of the record, (see AR 6). The Court must consider such evidence in reviewing the ALJ's decision, (see Brewes, 682 F.3d at 1163 ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.")), and "determine whether the ALJ's finding of nondisability was supported by substantial evidence in the entire record - including any new evidence
(continued...)

Defendant asserts that the ALJ properly determined, based on the VE's testimony, that the jobs of addresser, telephone order clerk, and charge-account clerk exist in significant numbers in the national economy. Alternatively, Defendant asserts that any error in the ALJ's finding that such jobs exists in significant numbers in the national economy is harmless. (See Joint Stip. at 11-19).

At step five of the sequential evaluation process, "the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations." Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015); see Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). The Commissioner may meet this burden by adopting the testimony of a VE or by reference to the Grids. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "In making this determination, the ALJ relies on the [Dictionary of Occupational Titles (DOT)], which is the [Agency's] primary source of reliable job information regarding jobs that exist in the national economy." Zavalin, 778 F.3d at 845-46; see 20 C.F.R. §§ 404.1566(d)(1), (d)(5), 416.966(d)(1) (noting that the Agency "will take administrative notice of reliable job information available from various governmental and other publications," including the DOT and the OOH); Social Security Ruling 00-4p, at *2 ("In making disability determinations, [the Agency relies] primarily on the DOT

---

[8] (...continued)
in the administrative record that the Appeals Council considered - not just the evidence before the ALJ." Gardner v. Berryhill, 856 F.3d 652, 656 (9th Cir. 2017).

8

(including its companion publication, the SCO) for information about the requirements of work in the national economy.").

At the hearing, the VE testified that a hypothetical person wth Plaintiff's RFC could perform the following jobs: (1) addresser (DOT 209.587-010, sedentary work, SVP 2, 101,000 jobs nationally); (2) telephone order clerk (DOT 209.567-014, sedentary work, SVP 2, 96,000 jobs nationally); (3) sorter (DOT 209.687-022, sedentary work, SVP 3, 11,000 jobs nationally); and (4) charge-account clerk (DOT 205.367-014, sedentary work, SVP 3, 212,000 jobs nationally). (See AR 84-87). The ALJ found this testimony to be consistent with the information in the DOT, and determined that, considering Plaintiff's age, education, work experience and RFC, Plaintiff is capable of performing the four jobs. (AR 44-45).

1. Addresser

DOT 209.587-010 describes the addresser job as follows: "Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail."

Plaintiff contends that the vocational expert's testimony that there are 101,000 addresser jobs in the national economy was erroneous. Plaintiff claims that "[t]he statistical evidence from the Department of Labor makes it impossible for there to exist 101,000 jobs as an addresser." (Joint Stip. At 8). As support for his contention, Plaintiff relies on a statement in the OOH that word processors and

typists, the occupational group to which addresser belongs (see https:\\www.onetonline.org/crosswalk/DOT?s=209.587-010&g=GO), represented 74,900 jobs (see AR 341, 343), and on information in the O*Net about the percentage of jobs for word processors and typists that required high school education or less (approximately 51%), 30 days or less of on-the-job training (approximately 51.5%), and 30 days or less of related work experience (approximately 4%) (see AR 347-48). (See Joint Stip. at 7-8, 20-21).

Plaintiff alternatively contends that the ALJ erred in finding that the addresser job exists in significant numbers in the national economy because it is an obsolete job. As support, Plaintiff relies on the statements by the Occupational Information Development Advisory Panel in the OMVCRS that the addresser job "might be obsolete" and that "[i]t is doubtful that these jobs [including addresser], as described in the DOT, currently exist in significant numbers in our economy" (AR 385). (See Joint Stip. at 8-9, 22).

2. <u>Telephone Order Clerk</u>

DOT 209.567-014 describes the job of order clerk, food and beverage, as follows:

> Takes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions. May be designated according to type of order handled as Telephone-Order Clerk, Drive-In (hotel & rest.); Telephone-Order Clerk, Room Service (hotel & rest.).

Plaintiff contends that the vocational expert erred in testifying that there are 96,000 telephone order clerk jobs in the national economy. According to Plaintiff, "While the entire array of order clerks represent 179,000 jobs, the proposition that a single DOT code represents something approximating half of the jobs in a single industry as full-time work activity is not reliable on this record. The data does not permit the inference that the vocational expert was even close." (Joint Stip. at 10). Plaintiff claims that there are only about 11,000 order clerk jobs in the national economy, assuming such jobs involved full-time, unskilled, sedentary work and sitting up to 6 hours in an 8-hour workday. (Id., at 20). Plaintiff relies on the following to support his claims: (1) a statement in the OOH that order clerks, the occupational group to which order clerk, food and beverage belongs (see https:\\www.onetonline.org/crosswalk/DOT?s=209.5677-014&g=GO), represented 179,000 jobs (see AR 301, 303); (2) information in the O*Net that 4% of order clerks work part-time (see AR 309); (3) information in the Occupational Requirements Survey that 49.7% of order clerks engage in unskilled work, 51.6% of order clerks engage in sedentary work, and order clerks sit for 75% of the 8-hour workday (see AR 315, 332, 335-36); and (4) information in the DOT 209.567-014 that an order clerk, food and beverage, works in the hotel and restaurant history (see AR 301). (See Joint Stip. at 9-10, 20, 22).

3. Charge-Account Clerk

DOT 205.367-014 describes the charge-account clerk job as follows:

11

> Interviews customers applying for charge accounts: Confers with customer to explain type of charge plans available. Assists customer in filing out application or completes application for customer. Reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and notify customer of acceptance or rejection of credit [CREDIT CLERK (clerical)]. May verify entries and correct errors on charge accounts [CUSTOMER-COMPLAINT CLERK (clerical)], using adding machine. May answer credit rating requests from banks and credit bureaus. May issue temporary shopping slip when credit references appear satisfactory.

Plaintiff contends that the vocational expert's testimony that there are 212,000 charge-account clerk jobs in the national economy was erroneous. Plaintiff claims that a "reduction in the number of jobs based upon full-time work activity, requirement for unskilled work, a limitation to sitting six hours in an eight-hour day, and the availability of a sit/stand option at will" makes the vocational expert's testimony about the number of charge-account clerk jobs in the national economy unreliable. As support for his contention, Plaintiff relies on a statement in the OOH that interviewers (except eligibility and loan), the occupational group to which charge-account clerk belongs (see https:\\www.onetonline.org/crosswalk/DOT?s=205.367-014&g=GO), represented 194,700 jobs (see AR 470, 472), and on information in the O*Net that 67.8% of the jobs of interviewers (except eligibility and loan) require no more than a high school education, 75.5% of the jobs of interviewers (except eligibility and loan) require one month or less of on-the-job training, 52.8% of the jobs of interviewers (except eligibility and loan) require one month or less of related work experience, 45% of the jobs of interviewers (except eligibility and loan) involve full-time work, 91% jobs of interviewers (except eligibility and loan) involve sitting continually or almost continually

12

or more than half the time, and 42.3% of the jobs of interviewers (except eligibility and loan) allow the option of sitting versus standing/walking at will (see AR 467-77, 481, 488, 492). (See Joint Stip. at 10-11, 21-22).

4. <u>Analysis</u>

The VE's testimony about the number of jobs in the national economy for addresser, telephone order clerk and charge account clerk was consistent was the DOT and was based on the VE's education, training and experience (see AR 88). Plaintiff did not object to the VE's qualifications (see AR 83). See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)("[T]he ALJ's reliance on the VE's testimony regarding the number of relevant jobs in the national economy was warranted. . . . A VE's recognized expertise provides the necessary foundation for his or her testimony."; footnote omitted).

Although the ALJ was required to reconcile any apparent conflict between the VE's testimony and the DOT, see Lamear v. Berryhill, 865 F.3d 1201, 1206-07 (9th Cir. 2017); Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007); Social Security Ruling 00-4p, the ALJ was not required to reconcile any conflict between the vocational expert's testimony and non-DOT sources. See Shauntaye M.G. v. Saul, 2020 WL 4569602, at *10 (C.D. Cal. Aug. 7, 2020)("The ALJ's duty to reconcile conflicts between a vocational expert's testimony and the DOT does not extend to non-DOT sources"); David G. v. Saul, 2020 WL 1184434, at *4-5 (C.D. Cal. Mar. 11, 2020)("[T]he ALJ's obligation to resolve conflicts between VE testimony does not extend to non-DOT sources like the OOH .

13

. . . Likewise, courts in this circuit have consistently found that an ALJ is under no obligation to resolve a conflict between VE testimony and . . . O*Net data."); Seaberry v. Berryhill, 2018 WL 1425985, at *6 (E.D. Cal. Mar. 22, 2018)("The ALJ was not obligated to resolve any conflict between the OOH or O*Net.").

Since Plaintiff has failed to identify, and the Court is unable to discern, any conflict between the VE's testimony and the DOT, the Court finds that the ALJ properly relied on the VE's testimony about the number of addresser, telephone order clerk and charge-account clerk jobs in the national economy. See Rosalie M.M. v. Saul, 2020 WL 5503240, at *2-*3 (C.D. Cal. Sept. 11, 2020); Wagner v. Berryhill, 2018 WL 3956485, at *4 (C.D. Cal. Aug. 14, 2018).

The Court also finds that Plaintiff's subjective and convoluted lay assessment of data from non-DOT sources does not undermine the VE's testimony concerning the number of addresser, telephone order clerk and charge-account clerk jobs in the national economy. See David G., 2020 WL 1184434, at *5; Jose Alfredo G. v. Saul, 2019 WL 6652086, at *6 (S.D. Cal. Dec. 5, 2019)("In any event, Plaintiff merely presents a lay interpretation of the alternative OOH and O*Net data. Lay assessments alone are insufficient to undermine the VE's analysis; such attempts have been uniformly rejected by numerous courts."; internal quotation omitted); Kirby v. Berryhill, 2018 WL 4927107, at *4-*5 (C.D. Cal. Oct. 10, 2018)("Counsel has not offered any expert opinion interpreting data from these sources, and the significance of the information reflected in the various excerpts counsel has provided is unproven. Courts considering arguments similar to those counsel now makes have found such

14

lay assessment of raw data cannot rebut a vocational expert's opinion."); Valenzuela v. Colvin, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013)(rejecting plaintiff's assessment or raw vocational data, in part, because it "was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context").

Accordingly, the ALJ's finding that there exist a significant number of jobs in the national economy that Plaintiff can perform, including addresser, telephone order clerk and charge-account clerk, was free of material error and was supported by substantial evidence in the record.

Defendant acknowledges, in response to Plaintiff's alternative contention that the addresser job is obsolete, that the addresser job as described in the DOT, may have diminished over time. (See Joint Stip. at 18, citing Gallo v. Commisioner of Soc. Sec. Admin., 449 Fed. Appx. 648, 650 (9th Cir. 2011)(noting that the description of the addresser job in the DOT "contains a seemingly antiquated reference to typewriters") and Skinner v. Berryhill, 2018 WL 1631275, *6 (C.D. Cal. Apr. 2, 2018)("[I]t is not unreasonable to assume that the occupation of 'addresser,' which -- as described by the DOT -- provides for addressing envelopes *by hand or by typewriter*, is an occupation that has significantly dwindled in numbers since 1991 in light of technological advances."). Nevertheless, the Court agrees with Defendant's assertion (see Joint Stip. at 18), that the ALJ's determination that there exist a significant number of jobs in the national economy that Plaintiff can

perform, including sorter (a determination which Plaintiff does not challenge, see footnote 7, infra), telephone order clerk and charge-account clerk (as discussed above), renders any error by the ALJ in determining that Plaintiff can perform the job of addresser harmless.[9] See Tommasetti v. Astrue, 553 F.3d 1035, 1038 (9th Cir. 2008)(an ALJ's error is harmless "when it is clear from the record that it was 'inconsequential to the ultimate nondisability determination'"); Thomas v. Comm'r of Social Sec. Admin., 480 Fed.Appx. 462, 464 (9th Cir. 2012)("Even if [the claimant] cannot perform the jobs of appointment clerk or assembler, she could perform the job of housekeeper cleaner, which existed in significant numbers in the national economy.").

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 7, 2021.

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[9] The Court does not make any determination about whether the job of addresser is obsolete.